ALLEN-WEST COMMISSION COMPANY v. HUDGINS.

Opinion delivered   March 11, 1905.

1. ACCOUNT STATED—INSTRUCTION.—It was not error to refuse to instruct the jury upon the theory that the action was based on an account stated if the complaint alleged merely an open account, and there was no evidence to show an account stated.

2. SAME.—An instruction that if plaintiff notified defendant that he would be charged commissions on cotton not shipped, and he afterwards promised to pay his account, then he had no right to complain of such commissions being charged was erroneous in assuming that by promising to pay his account defendant obligated himself to pay the commissions also, there being a dispute about such liability.

Appeal from Polk Circuit Court.

WILL P. FEAZEL, Judge.

### STATEMENT BY THE COURT.

The Allen-West Commission Company of St. Louis brought an action in the Polk Circuit Court against the firm of Hudgins Brothers, composed of J. G. and Holder Hudgins. The complaint alleged that "the defendants are indebted to the plaintiff in the sum of $851.25 upon an open account, particulars of which are set out in an account filed herewith, together with the credits to which defendants are entitled, which leaves a balance due of the sum above mentioned." The plaintiff asks judgment for the sum named.

The defendants appeared, and filed an answer, denying that they were indebted to plaintiff in the sum named, but subsequently offered to confess judgment for the sum of $187.75, which sum the plaintiff refused to accept.

On the trial J. N. Stegall, the treasurer of the plaintiff company, testified that the account sued on was correct, and in explanation of certain charges for cotton not shipped, which charges were disputed by the defendants, he said it was the custom of the company, when it advanced money to customers during the spring and summer, to require them to ship cotton at the rate of 100 bales for every $1,000 they owed the company on the 1st day of September following the advances made, or in default thereof

to pay $1.25 per bale on each bale they were short on the shipment. And in further explanation of the account against the defendants in this case he said:

"On the 1st day of September, 1898, there were due us $1,704.73, and according to our rules and custom they should have shipped us 170 bales of cotton between the first of September, 1898, and the first of September, 1899. During that year from the 1st of September, 1898, to the 1st of September, 1899, they only shipped us seven bales of cotton, which left a deficit of 163 bales, on which we charged them $1.25 per bale, amounting to the sum of $203.75. On the first of September, 1900, we charged them with a deficit of 163 bales at $1.25 per bale, amounting to the sum of $203.75. That year they only shipped us 24 bales, when they should have shipped us 187 bales, having carried over from the 1st of September, 1899, $1,874. On September 1, 1900, they owed us a balance of $1,325.79, and should have shipped during the year ending September 1, 1901, 133 bales of cotton, but only shipped us 20 bales, leaving a deficit of 113 bales, for which we charged them, on September 1, 1901, at the rate of $1.25 per bale, amounting to the sum of $141.25.

The total amount of commissions charged against the defendants for cotton not shipped amounted to $548.78.

Plaintiff also introduced several letters showing that from time to time it had asked defendants to pay the balance due them of the account, and had warned them that if they failed to pay, and the amount was carried over, the defendants would have to ship cotton in proportion of one bale to every $10 carried over, and that, unless they did so, plaintiff would charge them at the rate of $1.25 for every bale short of that amount. In replying to these letters, defendants ignored the matter of commissions, and usually promised to pay balance due as soon as possible, and to ship all the cotton they were able to ship.

The plaintiff asked the court to give the following instructions, towit:

"1. You are instructed that if you believe from the evidence that the plaintiffs, Hudgins & Brother, were notified by the plaintiff that they would be charged commissions upon cotton not shipped in liquidation of amounts carried over or advanced

to them, and, after having received such notice, promised to pay the account, they cannot now complain of the charge for commissions."

"2. You are instructed that it is presumed that the plaintiff was engaged in a business that was legitimate, and in which both custom and sound principle authorized the joint use of their money, or their personal services, increased in value by their character for integrity and experience; and it is lawful for them, while advancing their money at a specified rate of interest, to require, as a condition of the advance, that it should be invested in such property as would require their services in selling or handling it; and, if you find that Hudgins & Brother were informed of what was the custom of the plaintiff, and that commissions would be charged on cotton they failed to ship, and if, after having been so informed, they made no objection, they will be presumed to have agreed to pay the commissions upon their failure to pay the amount or ship the cotton."·

"5. The court instructs the jury that if the plaintiff rendered statements of its account to the defendants, and they were received by the defendants without objection, the account will be considered as stated or a settled account, and as liquidated by the parties, as fully so as if signed by both. The account in that event becomes a debt of contract implied by the law, and all the items of said account will be considered as one debt, and recovery may be had upon it, without regard to the items which compose it."

The court refused to give either of them, and defendant duly excepted.

Thereupon the court at the request of the defendants gave to the jury, among others, the following instructions to which the plaintiff excepted, towit:

"1. The court instructs the jury that the plaintiff is required to establish each and every item of his account that is denied by the defendants, by a preponderance of the evidence; that the burden of the proof is upon the plaintiff."

"3. If upon the whole case the jury are in doubt from the evidence as to whether the defendants are indebted to the plaintiffs, or if the evidence leaves the question evenly balanced as to

whether the defendants are indebted to the plaintiffs, then their verdict should be for the defendants."

"4. The court charges that if they believe from the evidence that items of commissions charged by plaintiff to defendants for cotton not shipped were not agreed to by defendants, and that plaintiff charged defendants interest on balance due at 8 per cent., then the jury should find for the defendants as to the sum of said commissions."

The jury rejected the claim for cotton not shipped, and returned a verdict against defendant for the sum of $187.75, and plaintiff appealed.

*Hal L. Norwood, J. M. Moore* and *W. B. Smith,* for appellant.

*J. W. & M. House,* for appellees.

Appellant was not entitled to recover for commissions on cotton not shipped. 85 Ala. 384; 73 Fed. 983; 10 Pa. St. 320; 108 Mass. 519; 31 Wis. 252; 85 Ala. 394; 34 S. W. 405; 64 Ala. 532; 63 N. Y. 377; 32 Ark. 475; 81 N. Y. 268; 38 Fed. 645. The contract was usurious. 95 N. C. 468; 35 Ohio St. 107; 54 Ala. 646; 8 Neb. 48; 11 N. Y. 565; 54 N. Y. 484; 67 Wis. 536; 22 Minn. 410; 161 U. S. 409; 99 Mich. 197.

RIDDICK, J., (after stating the facts.) This is an appeal by plaintiff company from a judgment in its favor, but for an amount smaller than that which it claims to be due from defendants. The main difference between the plaintiff and defendants relates to certain items charged against defendants for commissions on cotton not shipped, the particulars of which are shown in the statement of facts.

Defendants deny that they ever agreed to pay such commissions, or that they are liable therefor; and there is in the transcript no evidence of any express agreement to pay such charges. In the brief and argument of counsel for plaintiff made in this court the right to recover for such items is based largely on the claim that there was an account stated between plaintiff and defendants which embraced the items named. But there are several reasons why the court did not err in refusing to adopt that view of the matter. In the first place, the complaint in this case

alleges that the indebtedness of defendants to plaintiff is due, not upon a stated account, but upon "an open account." An account stated "is an agreement between parties who have had previous transactions of a monetary character that all the items of the account representing such transactions are true, and that the balance struck is correct, together with a promise, express or implied, for the payment of such balance." An account rendered by one party to another and retained without objection may become an account stated. Such an account operates as an admission of liability from the person against whom the balance appears. The law implies that he had engaged to pay this balance to the other party, and on this implied promise or admission an action may be brought. 1 Am. & Eng. Enc. Law, 437, 448; *Lawrence* v. *Ellsworth,* 41 Ark. 502. But to enable one to recover as upon an account stated he must declare upon it as such. *Patillo* v. *Allen-West Com. Co.* 108 Fed. Rep. 723; 1 Enc. Plead. & Prac. 88.

As the plaintiff, to quote the language of the complaint, sued upon an "open account," the items of which were set out in a statement attached to the complaint, and the defendant denied the correctness of several of these items, this let in evidence as to such items, and raised the issue whether they were proper charges against the defendants. After having by its pleadings and evidence presented to the jury for its decision the question of whether the items of the account were proper charges against the defendants, plaintiff undertook to shift its ground and cut off the effect of the proof which it had invited. To do this it asked the court to instruct the jury to decide the case on the theory of an account stated. But we are of the opinion that the court properly refused to so instruct, both because the plaintiff had not sued on an account stated, and for the further reason that there was no evidence to show an account stated.

Plaintiff introduced testimony to show that it was its custom to require customers to whom it had advanced money to ship cotton in proportion to the amount advanced, and, if they failed to do so, to charge commissions at $1.25 per bale on the cotton not shipped. But there is no testimony in the transcript to show that any statement of account was rendered to plaintiff in which such items were charged, or that the defendants ever made any

settlement with them in which they agreed to pay any balance made up in whole or in part of such charges. A witness for plaintiff, who was a member of the company, testified that it was the custom of the company to render statements to all its customers on the 1st day of September, but he did not say that it sent any statement to plaintiff; much less that it sent a statement in which these objectionable charges were contained. It is true that plaintiff introduced several letters written by defendants to it and by it to defendants in which, when defendants ask for further extensions of time on their account, plaintiff would reply that the balance due would only be extended on condition that the defendants agree to ship cotton or to pay commissions on the cotton not shipped. But the letters of the defendants do not show that they accepted the extensions on the terms named. The substance of the reply of the defendants to the letters of plaintiff was that defendants would pay as soon as they could.

Now, this correspondence between the plaintiff and defendants tended to some extent to show that there was an agreement between plaintiff and the defendants that defendants would ship the cotton or pay commissions on the same. But it does not show any account stated, for that is an altogether different matter. In other words, although the evidence tended to show that the charges were correct, it did not show or tend to show that the parties had subsequently agreed upon a balance as due, made up in part of these charges. While this evidence tended to show that the charges were in accordance with a previous agreement of the parties, there was evidence to the contrary, which made it a proper question for the jury to decide. But plaintiff did not ask to have this question submitted to the jury.

The first instruction asked by it was misleading, for the reason that it told the jury that if the plaintiff company notified Hudgins that he would be charged commissions on cotton not shipped, and he afterwards promised to pay his account, he then had no right to complain of such commissions being charged. Now, the fact that Hudgins, after receiving such notice, promised to pay his account, would not make him liable for the payment of the commissions unless his promise included the payment of the commissions also. Hudgins testified that in promising to pay his account he had no reference to the commissions which he

stated that he never promised or intended to pay. It was then a question for the jury to say whether he had ever agreed to pay such commissions, which should have been submitted to them under proper instructions; but this instruction, as before stated, was .based on the assumption that the defendants could not promise to pay the account that they did owe without binding themselves to pay items that they denied being liable for. On that account, as before stated, the instruction was misleading, and was properly refused.

The second instruction asked by defendants was subject to the same objection. It declares the law to be that if the defendants, on being informed by letter that they would be charged these commissions, made no objections, it would then be presumed as a matter of law that they agreed ·to pay such commissions. As we have before stated, · the failure of the defendants to object under such circumstances was a circumstance tending more or less to prove an agreement on their part to pay such a commission, but it did not justify the court in telling the jury as a matter of law that they should presume such an agreement from the mere failure to object.

·The third instruction relates to the defense of usury, which we need not consider, as it is no longer material. The circuit court did not give either side an instruction on that question, and plaintiff was not prejudiced by the refusal to give the one asked by it.

The fourth and fifth instructions asked by the plaintiff both related to the law of an · account stated, which, as we have above shown, has in this case neither allegation nor proof upon which to rest, and such instructions were therefore properly refused.

The instructions given at the request of the defendants were, under the facts of this case, substantially correct.

On the whole case, finding no prejudicial error, the judgment is affirmed.